### IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI EASTERN DIVISION

| | |
|---|---|
| JIMMY O. WARREN ) | |
| ) | |
| PLAINTIFF ) | |
| ) | Case No: |
| v. ) | |
| ) | JURY TRIAL DEMANDED |
| METRO TRANSIT, ET AL ) | |
| THE BI-STATE DEVELOPMENT ) | |
| ) | |
| Amalgamated Transit Local Union 788 ) | |
| 1611 S. Broadway, St. Louis, MO 63104 ) | |
| ) | |
| DEFENDANTS ) | |

## COMPLAINT FOR DISCRIMINATION AND DAMAGES

COME NOW JIMMY O. WARREN through his undersigned Counsel for his Complaint of Disability Discrimination and Retaliation in violation of the Americans with Disability Act of 1990 (ADA).

## PARTIES

1. Plaintiff was at all times relevant hereto a citizen and resident of Saint Charles County, Missouri.

2. Defendant Metro Transit/Bi-State was at all times relevant hereto a resident of the City of Saint Louis, Missouri and the state of Illinois.

3. Defendant Amalgamated Transit Local Union 788 located at 1611 S. Broadway, St. Louis, MO 63104 at all times relevant hereto a resident of the City of Saint Louis, Missouri.

## VENUE AND JURISDICTION

1. Jurisdiction is proper, the amount in controversy exceeds $75,000.00 in damages.

2. Venue is proper in this case because Defendants violated the federal statute/law Americans with Disability Act of 1990 (ADA).

## GENERAL ALLEGAITONS

3. Jimmy Warren, (Plaintiff) is a fifty-eight (58) year- old African American male who suffers from Congestive Heart Failure, Hypertension, Gout, Diabetes and Obesity.

4. Plaintiff was approximately 450 pounds and required accommodations due to health conditions.

5. Defendants were aware of Mr. Warren's health conditions and made fun of his large size frequently.

6. Due to Mr. Warren's large size and the medications, he requested an accommodation at Metro/Bi-State.

7. Mr. Warren desired and requested certain routes that would give access to a restroom due to complications from the medications.

8. Mr. Warren was capable of performing his essential job functions of driving the bus.

9. After Mr. Warren was terminated from Metro/Bi-State, he was able to obtain part-time work as bus driver.

10. Mr. Warren was a faithful and productive bus driver for Metro/Bi-State since March 27, 2000.

11. Mr. Warren developed health challenges after twelve (12) years of service in 2012.

12. Mr. Warren was medically diagnosed with a disability in 2012 within the ADA.

13. Mr. Warren made his health challenges known to supervisor Donna Holmes.

14. At no time did Donna Holmes work with Mr. Warren to provide support after she was made aware of his disability, such as adjusting his work schedule.

15. Ms. Holmes did not provide an accommodation to Mr. Warren and treated Mr. Warren in a hostile manner.

16. Mr. Warren was given several write-ups by Ms. Holmes for being late while officially using sick time and had a doctor statement which was not honored by Defendants.

17. Metro/Bi-State failed to recognize Mr. Warren's disability and pressured him to be on time when he should have been given an accommodation.

18. Mr. Warren received write-ups and was placed on the punitive "*Last Chance Agreement for Misses.*" This policy was used to remove Mr. Warren from his employment.

19. The "*Last Chance Agreement for Misses*" was endorsed and supported by Metro/Bi-State.

20. The "*Last Chance Agreement for Misses*" was endorsed and supported by Amalgamated Transit Local Union 788 (union).

21. Mr. Warren was penalized for his medical conditions under the *Last Chance Agreement For Misses* policy used by Metro Transit.

22. The *Last Chance Agreement For Misses* policy used by Metro Transit/Bi-State penalized employees suffering from a disability.

23. Mr. Warren was written up for being late and threaten with termination on numerous occasions while sick; Defendants used the *Last Chance Agreement For Misses,* a punitive work policy to penalize Mr. Warren.

24. Supervisor Donna Holmes and union representatives failed to provide accommodations for Mr. Warren to assist him with maintaining employment at Metro/Bi-State.

25. The Union Representative, Michael Brehain had an opportunity to intervene on behalf on Mr. Warren but failed to work to reinstate Mr. Warren back on the job.

26. Donna Holmes did not attempt to create a driving schedule or work environment to assist with medical challenges; Defendant Holmes used the *Last Chance Agreement For Misses* policy to write-up Mr. Warren while he was ill.

27. Mr. Warren was degraded and humiliated for his large size.

28. Mr. Warren was demeaned and harassed due to his medical disability versus receiving support and an accommodation.

29. Mr. Warren was teased because of his large sized.

30. Mr. Warren's size did not prevent him from driving the bus.

31. Mr. Warren filed a grievance for harassment, failure to accommodate, retaliation, retaliatory treatment against his supervisor Donna Holmes and cited to the *Last Chance Agreement For Misses* policy; stating it was punitive and hurtful towards his employment.

32. *Last Chance Agreement For Misses* policy was designed to fire individuals who had absentee problems due to a disability.

33. *Last Chance Agreement For Misses* the policy was directed at individuals who had known disabilities and who were on sick leave.

34. *Last Chance Agreement For Misses* policy was found to be punitive by Metro/Bi-State and the company reinstated several fired employees with disabilities.

35. Mr. Warren was not reinstated due to his large size weighting at the time in excess of 450 pounds which was part of his disability.

36. Mr. Warren was capable of driving the bus for Metro/Bi-State and his size did not interfere with his driving responsibilities.

37. The firing of Mr. Warren left him without his pension, health insurance or income.

38. Mr. Warren was placed under severe stress, emotional harm, duress and experienced anxiety due to his treatment at work.

39. Mr. Warren required medical assistance to deal with the anxiety and duress he endured at Metro/Bi-State.

40. Mr. Warren was terminated on 9/23/2013 after filing a grievance and complaining about Metro/Bi-State's abusive policy practices, more importantly the *Last Chance Agreement For Misses* policy.

41. Mr. Warren was rehired on 11/04/2013 and placed back on the *Last Chance Agreement For Misses* policy while the Defendants knew he was still suffering with a chronic disability and would require some time off from work.

42. Mr. Warren was given a final written warning on November 4, 2013 for violating the *Last Chance Agreement For Misses* policy.

43. Defendants informed Mr. Warren that he violated the policy again on 8/13/2014.

44.  Defendants declined reinstatement of employment noting that Mr. Warren had previously been unsuccessful under the *Last Chance Agreement For Misses* policy.

45. Mr. Warren filed another grievance and did not prevail on the grievance.

46. The Union Representatives failed to advocate to reinstate Mr. Warren after he filed discrimination charges against Metro based on his disability.

47. Mr. Warren was terminated from Metro/Bi-State on August 22, 2014.

48. Mr. Warren filed a Charge of Discrimination with the EEOC for disability discrimination and was issued a Right to Sue Letter.

49. Mr. Warren initially filed his claims against Defendant in St. Louis City Circuit Court, November 2017.

50. Defendants removed Mr. Warren's claims to the United States Eastern District of Missouri.

51. The case was briefed and the Eastern District Court remanded the case to the St. Louis City Circuit Court due to no federal question presented on the Complaint.

52. The case was dismissed on June 18, 2019 in St. Louis City Circuit Court without prejudice pursuant to **_Jordan v. BiState_ No. ED106158.**

53. **_Jordan v. BiState_** stated that due to Metro/Bi-State's interstate compact clause, laws must be parallel and complimentary to avoid undue burden and risk to the Defendant.

54. Mr. Warren now can only bring his employment claims against Defendants in federal court.

55. _Jordan v. BiState_ was not precedent at the time Mr. Warren's case was remanded to St. Louis City Circuit Court.

56. Mr. Warren has no other equitable remedy but to refile his claims of discrimination in violation of the American's with Disability Act 1990 in federal court.

57. Mr. Warren has actionable claims against the Defendants under the American's with Disability Act and claims for retaliation.

## COUNT I
## DISABILITY DISCRIMINATION

58. Plaintiff hereby incorporates every allegation aforementioned as if the same were stated fully herein.

59. According to the ADA, **American's with Disabilities Act of 1990 42 U.S.C. §1211** *et. seq.* and **retaliation** an employer may not terminate an employee based on his disability.

60. Mr. Warren was disabled within the definition of the **American's with Disabilities Act of 1990 42 U.S.C. §1211** *et. seq.*

61. Mr. Warren was fired based on his disability; Mr. Warren suffered from Congestive Heart Failure, Diabetes, Hypertension Gout, and Obesity.

62. Mr. Warren was able to perform the essential functions of his job at the time of his firing.

63. After Mr. Warren's firing, he drove a bus part-time.

64. Mr. Warren has worked to mitigate his damages and currently drives part-time.

65. Mr. Warren has an impairment and with a reasonable accommodation that impairment would not interfere with the job.

66. After Mr. Warren disclosed that he had a disability, the ADA requires an employer to "engage with the employee in an 'interactive process' to determine the appropriate accommodation under the circumstances."

67. Donna Holmes did not engage in an interactive process to assist Mr. Warren with his disability.

68. Donna Holmes did not attempt to create a work schedule to accommodate the needs of Mr. Warren.

69. Donna Holmes did not allow Mr. Warren to come to work at a later hour to assist him with his disability. Mr. Warren's problem could have been resolved by moving him to a different work schedule to drive.

70. Metro/Bi-State had several routes that could have accommodated Mr. Warren.

71. The Union Representatives did not engage in an interactive process to assist Mr. Warren with his disability.

72. The Union Representative did not engage in an interactive process to develop and identify a non-punitive employment plan to assist Mr. Warren with maintaining his employment.

73. The Union Representative failed to engage in an interactive process with Mr. Warren to protect his pension and retirement plan, foregoing their responsibility to engage in an interactive process.

74. Donna Holmes failed to work with Mr. Warren to protect his pension and retirement plan, forgoing their responsibility to engage in an interactive process.

75. The Union Representative and Donna Holmes failed to reinstate Mr. Warren's employment due to his large size but reinstated other Metro employees who suffered from a disability and who were penalized by the *Last Chance For Misses Agreement.*

76. The union breached their duty of fair representation on behalf of Mr. Warren.

77. The union breached their duty of fair representation by displaying conduct that is arbitrary, discriminatory, or in bad faith.

78. The union displayed discriminatory conduct in bad faith by not representing Mr. Warren in his claims against Metro/Bi-State due to his disability.

79. The union breached their duty of fair representation by providing poor representation of the collective bargaining contract.

80. The union had a fiduciary duty to represent a union member; and Mr. Warren was a dues paying union member.

81. The union breached that duty and caused harm to Mr. Warren.

82. The union did not advocate that Mr. Warren was capable of performing the essential functions of his job but advocated for other union members.

83. Mr. Warren suffered harm through ridicule, loss of benefits, loss of health care, loss of income and loss of his pension.

84. The union failed to repair the breach by reinstating Mr. Warren when the union reinstated other employees penalized by *Last Chance For Misses Agreement.*

85. There is evidence that a discriminatory animus motivated the union not to rehire Mr. Warren; Mr. Warren was obese and had a disability but was capable of driving the bus.

86. Metro also breached their duty to Mr. Warren by terminating his employment causing him to lose his pension, retirement benefits and several years of salary.

87. Mr. Warren suffered an adverse action by the Defendants.

88. Mr. Warren suffered an adverse action when he was ridiculed, defamed, humiliated, teased and berated for his sickness and obesity.

89. Mr. Warren suffered an adverse action when Defendants placed him on *Last Chance For Misses Agreement;* the Defendants knew Mr. Warren was suffering from a disability and was sick at the time of placing him on the agreement.

90. Mr. Warren suffered an adverse action when he loss his income, health care, retirement benefits and pension.

91. Mr. Warren suffered an adverse action when he was fired on August 22, 2014.

92. Mr. Warren was treated disparately than similarly situated employees without a disability.

93. Defendants treated employees without a disability and obese more favorably than Mr. Warren.

94. Defendants allowed disabled employees penalized by the "*Last Chance Agreement For Misses,* to get reinstated to employment at Metro/Bi-State.

95. Mr. Warren should have been reinstated with the group of terminated disabled employees; however, Mr. Warren was not allowed to return to work due to his very large size at the time of 450 pounds and his disability.

96. Defendants discriminated against Mr. Warren due to his handicap and impairment.

97.  Defendants placed Mr. Warren in an untenable position due to his disability.

98. Defendants' conduct violated the **American's with Disabilities Act of 1990 42 U.S.C. §1211** *et. seq.* by terminating Mr. Warren based on his disability.

## COUNT II RETALIATION

99. Mr. Warren was retaliated against for reporting the "*Last Chance Agreement for Misses"* in violation of **American's with Disabilities Act of 1990 42 U.S.C. §1211** *et. seq.*

100.     Mr. Warren was retaliated against for filing a Charge of Discrimination in violation of the ADA.

101.     *Section 503 of the ADA, § 12203(a  ) (R. 16, 40)* entitled *"PROHIBITION AGAINST RETALIATION AND COERCION",* states, in relevant part, as follows:

 (a) *Retaliation.* No person shall discriminate against **[\*33]** any individual because such individual has opposed any act or practice made unlawful by this Act or because such *individual made a charge,* testified, assisted, or participate in any manner in an investigation, proceeding, or hearing under this Act.

  (b) *Remedies* and Procedures. The *remedies* and procedures available under *sections 107,*

203, and 308 of this Act shall be available to aggrieved persons for violations of subsections (a) and (b), with respect to *title I,* title II and title III, *respectively.* (emphasis added)

102. Mr. Warren made a complaint to the union representatives regarding the punitive policy ***Last Chance Agreement for Misses"***

103. Mr. Warren was bullied, retaliated against and harassed by Donna Holmes for filing a Charge of Discrimination in violation of the ADA and complaining about ***Last Chance Agreement for Misses" policy.***

104. Mr. Warren was retaliated against because he opposed the acts and practices at Metro/Bi-State pertaining to "***Last Chance Agreement for Misses"*** that penalized employees with disabilities.

105. Mr. Warren was retaliated against because he made a charge regarding his disability, testified pertaining to his disability, and participated in an ongoing investigation for his disability while employed at Metro.

106. Mr. Warren made his charge and complaint under the ADA.

107. Mr. Warren is entitled to a remedy and damages pursuant to ***Section 503 of the ADA, § 12203(a  ) (R. 16, 40).***

108. Mr. Warren was harassed and intimidated for making his complaint.

109. Mr. Warren was fired after his initial complaint; rehired and fired again.

110. Defendants had knowledge that they were violating Mr. Warren's rights and other employee rights with their company policies, "***Last Chance Agreement for Misses"*** that violated the ADA.

111. Mr. Warren received retribution and retaliation for speaking out against Metro/Bi-State's polices.

112. Defendants' actions and behavior towards Mr. Warren were intentional and harmful.

113. Consequently, due to this discriminatory discharge, Mr. Warren has suffered damages, including loss wages, back pay, retirement benefits and other benefits of employment.

114. Mr. Warren has been placed in an untenable position and has suffered damages.

115. Defendants penalized and retaliated against Mr. Warren for failure to complete the *Last Chance Agreement For Misses.*

116. Defendants' conduct against Mr. Warren was intentional, resulted in harm and financial loss.

117. Defendants violated the **American's with Disabilities Act of 1990 42 U.S.C. §1211** *et. seq.* by firing Mr. Warren and his disability was a motivating factor in Defendants' decision to terminate.

118. Mr. Warren was harassed by Defendants and made fun of due to his large size and obesity.

119. Mr. Warren is a very large man and was embarrassed and demeaned at work due to his size.

120. Defendants' conduct to Mr. Warren was intentional, resulting in harm and financial loss.

121. Mr. Warren's disability was a motivating factor in his termination and he has suffered damages due to his firing.

122. Defendants' conduct and behavior towards Mr. Warren was intentional and harmful; Mr. Warren has suffered damages.

123. Defendants' discriminatory work practices intentionally placed Mr. Warren under severe emotional distress.

124. The Defendants' conduct was extreme and outrageous.

125. Defendants acted in an intentional and reckless manner towards the Mr. Warren causing harm.

126. The Defendants' actions caused Mr. Warren severe emotional distress that resulted in emotional harm.

127. Consequently, due to this discriminatory discharge, Mr. Warren has suffered damages, including loss wages, enjoyment of life, back pay, pension, retirement benefits and other benefits of employment.

WHEREFORE, Plaintiff prays for judgment in his favor against Defendants for the stated claims. Plaintiff seeks an award of damages in excess of $75,000.00 and for such compensatory and such punitive damages as are fair and reasonable including reasonable attorney fees and costs, and such other relief as this Court deems just and proper.

*Respectfully Submitted,*

THE LAW OFFICE OF SHEILA R. STUART, LLC

*/s/ Sheila R. Stuart*

Sheila R. Stuart, #65217MO
law@sheilastuart.com
Bemiston Tower
231 South Bemiston Avenue Suite 800
Clayton, MO 63105
Phone: (314) 854-1339 (office)
Phone: (314) 680-0920 (cell)
Phone: (314) 854-9118  (fax)

**CERTIFICATE OF SERVICE**

I hereby certify that on the 16th day of June 2020 a true and correct copy of the foregoing was served via through electronic mail  upon; James Foster, **foster@mcmahonberger.com** and Dean Kpere-Daibo **dkd@mcmahonberger.com**  at 2730 North Ballas Road, Suite 200 St. Louis, MO 63131-3039.

*/s/ Sheila R Stuart*